**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| GREGORY BLACK, ) | |
| ) | CASE NO. 1:14-cv-00738 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Gregory Black ("Black") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying his claim for a Period of Disability ("POD") and Disability Insurance Benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

**I. Procedural History**

On November 2, 2010, Black filed an application for POD and DIB alleging a disability

onset date of October 1, 2010.[1] (Tr. 18.) His application was denied both initially and upon reconsideration. Black timely requested an administrative hearing.

On December 19, 2012, an Administrative Law Judge ("ALJ") held a hearing during which Black, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 18.) On January 10, 2013, the ALJ found Black was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr, 27-29.) The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

*Personal and Vocational Evidence*

Age fifty-three (53) as of the date last insured, Black is a person "closely approaching advanced age" under social security regulations. *See* 20 C.F.R. § 404.1563(d). (Tr. 27). Black has a limited education and past relevant work as a child monitor, machine operator II, punch press operator, injection molding machine tender, hand packager, and drill press operator. (Tr. 27.)

## III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a

---

[1] Black filed previous applications for POD and DIB on December 9, 2008. That claim was denied after a hearing on September 30, 2010. (Tr. 18.)

continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[2]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Black was insured on his alleged disability onset date, October 1, 2010 and remained insured through June 30, 2011. (Tr. 21.) Therefore, in order to be entitled to POD and DIB, Black must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

### IV. Summary of Commissioner's Decision

The ALJ found Black established medically determinable, severe impairments, due to cervical and lumbar degenerative disc disease, status post cervical laminectomy surgery, bilateral carpal tunnel syndrome that is worse on the right, hypertension, cervical myelopathy, and depression. (Tr. 21.) However, his impairments, either singularly or in combination, did not

---

[2] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id*. Black was found capable of performing his past relevant work, and was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. (Tr. 23, 27.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Black was not disabled. (Tr. 27-28.)

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270,

4

273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

*RFC Finding*

Black claims the RFC finding is not supported by substantial evidence, because the record shows that he is more limited in the use of his hands than suggested. (ECF No. 17 at 9-11.)

The ALJ assessed Black as having the following RFC:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and meaning that the **claimant can lift/carry forty-four pounds occasionally and thirty-three pounds frequently**; can stand/walk a total of six hours out of an eight-hour day for one hour at a time; can sit a total of six hours out of an eight-hour day for one hour at a time; should avoid repetitive tasks of shifting, etc. **alternating any repetitive tasks with non repetitive tasks for the upper extremities; no continuous gripping with the right hand**; is capable of understanding, remembering, and carrying out instructions to perform routine to moderately difficult tasks; can interact up to occasionally with the general public, coworkers, and supervisors on a superficial basis; and can adjust to routine and ordinary changes in the work place setting in an environment that is not fast paced or has high production demands.

(Tr. 23) (emphasis added).

Black alleges that the RFC ignores evidence of motor and sensory deficits in his upper extremities. (ECF No. 17 at 10.) However, Black fails to fully develop this argument and merely cites numerous pages of the record with only a limited explanation.[3] *Id*.

The Court has reviewed the pages cited by Black and finds no obvious inconsistencies with the RFC. On October 7, 2010, Lauren M. Verlander, D.O., found "[m]uscle tone examination showed normal tone and bulk within the upper and lower extremities. Proximally the upper

---

[3] It is further unclear how Black's statements that he had a decreased range of motion in his cervical spine and shoulders, as well as pain in his arm, support his argument that the RFC should have incorporated greater limitations in the use of his hands. (ECF No. 17 at 10-11.)

extremities are full strength. L[eft] finger extensors 4-/5, thumb opposition and pinky opposition also 4/5 on the [Left] LEs 5/5 throughout." (Tr. 304.) However, there was "[d]ecreased sensation to pinprick in the finger bilaterally, more on the plantar surfaces," as well as a "slightly decrease[d] vibratory sense in the [left] hand. (Tr. 304-05.)

Progress notes by Howard R. Smith, M.D., from November 9, 2010 reveal that Black had decreased "sensory to touch" in both upper extremities, but it was also noted that, upon inspection and palpation, the joints, bones, muscles, and tendons of the four extremities are "within normal limits with no swelling, erythema, effusions, or tenderness." (Tr. 312.) It was further noted that there was "full range of motion with no crepitation or contracture," "no soft tissue swelling," and "no joint instability, subluxation, misalignment, or laxity." *Id*. Furthermore, "inspection and palpation of digits and nails was normal with no clubbing, cyanosis, crepitation, infections, or nodes. *Id*. On the same date, Dr. Smith indicated that, upon physical examination, power in the upper extremities was 5/5 bilaterally, but he did note altered sensation to light touch in the upper extremities, decreased range of motion in the shoulders, and pain when lifting arms above the head. (Tr. 315.)

On January 28, 2011, Asma Azimi, M.D., observed upon physical examination that Black's extremities were "normal" with "[n]o deformities, edema, or skin discoloration," and that "[m]otor and sensory [were] grossly intact." (Tr. 326.) On March 8, 2011 and again on June 7, 2011, Dr. Smith did note primary complaints revolved around pain in Black's neck, which sometimes radiated to the right upper extremity. (Tr. 354-55, 361-62.) While Black specifically cites Dr. Smith's observation of decreased motor strength in the right biceps, triceps, and grip, only the last limitation is relevant to Black's argument that the RFC should have incorporated

7

greater limitations in the use of his hands.[4] (ECF No. 17 at 11, *citing* Tr. 354-355, 361-62, 484-85.) The RFC expressly prohibited continuous gripping with the right hand. (Tr. 23.)

The RFC determination incorporated some limitations concerning Black's upper extremities and his right hand. (Tr. 23.) While Black has asserted that the record warranted greater limitations "in the use of his hands," he has simply failed to establish that substantial evidence did not support the ALJ's decision. The only limitations identified by Black in his argument that specifically relate to the use of the hands – reduced grip strength – appear to have been accommodated by the RFC. As such, his first assignment of error is without merit.

***Development of the Record.***

In his second assignment of error, Black argues that the ALJ failed to fully develop the record, thereby depriving him of a full and fair hearing. (ECF No. 17 at 11-13.) Black avers that the most recent state agency assessment of his physical limitations occurred on October 5, 2011 (Tr. 114), over a year prior to the hearing, which was held on December 19, 2012. (ECF No. 17 at 12.) Black contends that the ALJ should have ordered a consultative examination or solicited the testimony of a medical expert at the hearing to testify as to the import of the more recent evidence. *Id*.

In the Sixth Circuit, it is well established that the claimant — and not the ALJ — has the burden to produce evidence in support of a disability claim. *See, e.g., Wilson v. Comm'r of Soc. Sec.*, 280 Fed. App'x. 456, 459 (6th Cir. 2008) (*citing* 20 C.F.R. § 404.1512(a)). *See also Struthers v. Comm'r of Soc. Sec.*, 181 F.3d 104 (table), [published in full-text format at 1999 U.S.

---

[4] Dr. Smith made an identical observation on September 8, 2011, several months after Black's date last insured. (Tr, 484-85.)

App. LEXIS 11102], 1999 WL 357818 at *2 (6th Cir. May 26, 1999) ("[I]t is the duty of the claimant, rather than the administrative law judge, to develop the record to the extent of providing evidence of mental impairment."); *Landsaw v. Sec'y. of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("The burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant. 20 C.F.R. §§ 416.912, 416.913(d)."); *cf. Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 396 (6th Cir. 2010) (although an "ALJ has an inquisitorial duty to seek clarification on material facts," a plaintiff, who is represented by counsel, must provide a "factual record" relating to the length of his employment when his past work was part of the record and was the basis of the initial decision to deny benefits). However, there is a special, heightened duty requiring the ALJ to develop the record when the plaintiff is "(1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures." *Wilson*, 280 Fed. App'x. at 459 (*citing Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983)).

In the case at bar, Black was represented by counsel at the hearing (Tr. 18) and, therefore, the ALJ had no heightened duty. Furthermore, "an ALJ is not required to refer a claimant for a consultative examination unless the record establishes that such an examination 'is necessary to enable the administrative law judge to make the disability decision.'" *Williams v. Astrue*, 1:11-CV-2569, 2012 U.S. Dist. LEXIS 116744, 2012 WL 3586962 (N.D. Ohio Aug. 20, 2012) (*quoting Landsaw*, 803 F.2d at 214)). Pursuant to 20 C.F.R. § 404.1519a(b), a consultative examination may be purchased "to try and resolve an inconsistency or when the evidence as a whole is insufficient to support a determination or decision ..." However, "[t]he plain language

of the statute clearly places the decision to order a consultative examination within the discretion of the ALJ." *Evans v. Astrue*, 3:10-CV-67, 2010 U.S. Dist. LEXIS 138755, 2010 WL 5488525 (E.D. Tenn. Nov. 22, 2010), report and recommendation adopted, 3:10-CV-67, 2011 U.S. Dist. LEXIS 662, 2011 WL 13453 (E.D. Tenn. Jan. 4, 2011); *see also Lucas v. Comm'r of Soc. Sec.*, 1:11 CV 2497, 2013 U.S. Dist. LEXIS 40559, 2013 WL 1150019 (N.D. Ohio Mar. 19, 2013) ("Ordering a consultive exam lies in the discretion of the ALJ."); *Cyrus v. Astrue*, 1:11-CV-234, 2012 U.S. Dist. LEXIS 92679, 2012 WL 2601495 (S.D. Ohio July 5, 2012) ("Whether or not to order a consultative examination is a discretionary decision made by an ALJ upon a finding that the record is not sufficiently developed to evaluate a claim."), report and recommendation adopted, 1:11CV234, 2012 U.S. Dist. LEXIS 106210, 2012 WL 3113224 (S.D. Ohio July 31, 2012); *Lockett v. Comm'r of Soc. Sec.*, 11-13709, 2012 U.S. Dist. LEXIS 122877, 2012 WL 3759037 (E.D. Mich. Aug. 1, 2012) ("The determination to order a consultative examination or diagnostic testing is entirely discretionary..."), report and recommendation adopted, 11-13709, 2012 U.S. Dist. LEXIS 122876, 2012 WL 3731772 (E.D. Mich. Aug. 29, 2012).

Black has not demonstrated that the record was insufficiently developed to make a disability determination, and the ALJ, therefore, did not abuse her discretion by failing to order a consultative examination or enlist a medical expert at the hearing. Black's argument fails to acknowledge the significant fact that his date last insured ("DLI") was determined to be June 30, 2011.  (ECF No. 17 at 11-13.)  Black's disability application does not contain a claim for Supplemental Security Income ("SSI") and, as such, Black was only entitled to POD and DIB if he could establish a continuous twelve month period of disability commencing prior to the expiration of his eligibility for benefits.  As such, the fact that the last physical RFC assessment

contained in the record is from October 5, 2011 (Tr. 114), an assessment that itself occurred over three months after the DLI, undermines Black's argument that a more recent assessment should have been obtained.

As such, his second assignment of error is also without merit.

*Credibility*

Finally, Black argues that the ALJ's credibility assessment is not supported by substantial evidence. Black asserts that the reasons given by the ALJ for discrediting him are not clearly defined and "wrong." (ECF No. 17 at 13-15.)

Reviewing courts, such as this one, "are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity ... of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *accord Collins v. Comm'r of Soc. Sec.*, 357 Fed. App'x. 663 (6th Cir. 2009). It is, however, well settled that pain alone, if caused by a medical impairment, may be severe enough to constitute a disability. *See Kirk v. Sec' of Health and Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). When a claimant alleges symptoms of disabling severity, the ALJ must follow a two-step process for evaluating these symptoms. First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment. Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the symptoms." SSR 96-7p. Where the alleged symptom is pain, as the Commissioner must (1) examine whether the objective medical evidence supports a finding of an underlying medical condition; and, (2) whether the objective medical evidence confirms the alleged severity of pain or whether the objectively established medical condition is of such a severity that it can reasonably be expected

11

to produce the alleged disabling pain. *See Felisky v. Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994).

If these claims are not substantiated by the medical record, the ALJ must make a credibility determination of the individual's statements based on the entire case record. *Id.* Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Nonetheless, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individuals statements and the reason for the weight." SSR 96-7p, Purpose section; *see also Felisky,* 35 F.2d at 1036 ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so"). To determine credibility, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. *See* SSR 96–7p, Purpose. Beyond medical evidence, there are seven factors that the ALJ should consider.[5] The ALJ need not analyze all seven factors, but should show that she

---

[5] The seven factors are: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96–7p, Introduction; *see also Cross v. Comm'r of Soc. Sec.*, 373 F.Supp.2d 724, 732-733 (N.D. Ohio 2005) (stating that an ALJ, in a unified statement, should

considered the relevant evidence. *See Cross,* 373 F.Supp.2d at 733; *Masch v. Barnhart*, 406 F.Supp.2d 1038, 1046 (E.D. Wis. 2005).

Here, the ALJ discussed the medical evidence and hearing testimony regarding Black's impairments. (Tr. 21-27.) Although the ALJ could have offered a clearer explanation of Black's credibility, she discussed all the relevant factors in the decision. She addressed Black's allegations of pain, the various treatment modalities, including pain medication and its efficacy, and Black's own statement that his pain medication increased his activities of daily living. (Tr. 23-25, citing Tr. 313.) The ALJ further specifically pointed to a medical record from October 9, 2011, wherein Hong Shen, M.D., recommended that Black engage in chronic pain rehabilitation as suggested by another physician, but that Black simply wanted Percocet, "refused the recommended consult and left the department." (Tr. 24, citing Tr. 495.) As for "other factors," the ALJ noted that Black worked "very little" the past fifteen years despite only alleging an onset date of October 2010, and, that Black "has not reported what has prevented him from working other years."[6] (Tr. 25-26.)

Black merely argues that his use of Percocet was not abusive, and that ALJ's reliance on an EMG performed a year before his alleged onset date was improper, as it predated a cervical laminectomy that impacted the use of his hands. (ECF No. 17 at 14-15.) Although Black ostensibly believes the reasons given by the ALJ do not demonstrate a lack of credibility, it is not

---

explain his or her credibility findings in terms of the factors set forth in the regulations, thereby permitting the court to "trace the path of the ALJ's reasoning.")

[6] The ALJ noted that Black's poor work history may have been affected by his criminal history, which included incarceration for periods of time ranging up to one year. (Tr. 26, citing Tr. 340.)

13

this Court's role to "reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)). *See also Vance v. Comm'r of Soc. Sec.*, 2008 WL 162942 at * 6 (6th Cir. Jan. 15, 2008) (stating that "it squarely is *not* the duty of the district court, nor this court, to re-weigh the evidence, resolve material conflicts in testimony, or assess credibility.") The ALJ provided sufficiently specific reasons for her credibility determination and supported those reasons with reference to specific evidence in the record. Thus, the Court finds the third assignment of error is without merit.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: March 30, 2015